**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
PHILLIP DUNHAM,                 )
                                )
          Plaintiff,            )
                                )
          v.                    )        Civil Action No. 07-1106 (RWR)
                                )
MICHAEL ASTRUE,                 )
                                )
          Defendant.            )
_____)
```

## MEMORANDUM OPINION AND ORDER

Plaintiff Phillip Dunham appeals the decision the Commissioner of the Social Security Administration ("SSA"), finding Dunham ineligible for Social Security disability insurance ("SSDI") benefits. Dunham claims that the administrative law judge ("ALJ"), whose decision became the Commissioner's, erred by deciding that Dunham was not disabled within the regulations. The Commissioner opposes and moves for affirmance of his final decision. Because the ALJ did not consider or explain evidence contradicting his conclusion about Dunham's skin conditions or determine adequately whether Dunham can ambulate effectively, his decision was not supported by substantial evidence. Dunham's motion for reversal will be granted in part, the Commissioner's motion for affirmance will be denied, and the case will be remanded for further proceedings.

- 2 -

BACKGROUND

Dunham suffers from degenerative joint disease or osteoarthritis, and human immunodeficiency virus ("HIV"). (Compl. ¶ 2.)  Dr. David Lanier treated Dunham for his HIV infection, which was under control.  (Administrative R. ("R.") at 899; App. of Exs. to the Mem. in Supp. of Appeal of Phillip Dunham ("Ex.") 33 at 1.)[1]  In a February 2004 report, Dr. Lanier stated that Dunham had herpes zoster "disseminated or with multidermatomal eruptions[,]" resistant to treatment, and a skin or mucous membrane condition with "extensive fungating or ulcerating lesions not responding to treatment."  (R. at 845-46.) Dr. Lanier later noted in an August 2004 report that Dunham was not experiencing any opportunistic infections in connection with his HIV.  (Id. at 899.)  However, although Dr. Lanier stated in January 2006 that the HIV disease did not limit Dunham's ability to work, he added that Dunham's other medical conditions, including "significant degenerative osteoarthritis affecting his hip, knees and back" and "severe eczema" for which Dunham received care from a dermatologist, "appeared to have produced impairments."  (Ex. 33 at 1-2.)

---

[1] Dunham filed several attachments to supplement the administrative record that was filed by the Commissioner.  The Commissioner did not contest that these exhibits were part of the official administrative record.

- 3 -

Dr. Peter Trent treated Dunham for his degenerative joint disease.  Dr. Trent performed a right total hip replacement surgery on Dunham in 2004.  (R. at 878.)  After hip surgery, Dunham was using a cane and experienced "little, if any, pain in the hip[,]" but continued to experience pain in his right knee. (Id. at 872.)  Dunham's knee pain, and MRI results indicating medial and lateral meniscal tears, later required arthroscopy, a synovectomy, and a partial medial meniscectomy in March of 2005. (Id. at 866, 871.)  After this knee surgery, Dr. Trent concluded that Dunham should apply for disability because Dunham had "significant impairment" to his leg "coupled with his underlying illness and the degenerative joint disease involving his hip[,] which was severe enough to require hip replacement." (Id. at 865.)  Dr. Trent opined several months later that the hip and knee surgeries resulted in restrictions on Dunham's standing, walking, sitting, bending, crouching, and climbing, and that Dunham was "fit for only sedentary work."  (Ex. 32 at 1.)  By March of 2006, Dr. Trent found that Dunham was "totally disabled and . . . expected to remain so in the foreseeable future" because of the chronic fatigue from his HIV treatment, the pain with doing activities of daily life, and the limitations on standing, walking, lifting, climbing, and carrying.  (R. at 951.)

Dunham's SSDI application was initially denied and then denied again upon reconsideration.  (Compl. ¶¶ 3, 4.)  He

- 4 -

appealed the denial and an ALJ held a hearing in March of 2006.
(Id. ¶ 6.)  The ALJ concluded that Dunham was not disabled
according to any of the listings of impairments contained in the
applicable regulations.  (Id. ¶ 6.)  See 20 C.F.R. 404, Subpart
P, App'x 1 §§ 1.02, 1.03, 14.08.  The ALJ found that Dunham did
not meet the listings in § 1.02 and § 1.03, which both involve
musculoskeletal joint conditions, because after some temporary
impairment, Dunham was able to ambulate effectively.  The ALJ
relied on evidence that Dunham "was much more active and walking
every day," experiencing "little, if any, hip pain" after hip
surgery.  (R. at 21.)  After knee surgery, Dunham's recovery was
expected to take six months and he "was able to walk with a
cane."  (Id.)  The ALJ also concluded that Dunham did not meet
the § 14.08(F) listing, which covers claimants with HIV
infections and skin or mucous membrane conditions, because his
chronic folliculitis had been successfully treated, and there was
no ongoing treatment for recurrent skin conditions or
opportunistic infections.  (Id.)

The ALJ gave Dr. Lanier's opinion regarding Dunham's HIV
infection controlling weight, but Dr. Lanier's opinion "regarding
[Dunham's] ability to walk or stand [was] not given significant
weight."  (Id. at 19.)  The ALJ found that Dr. Trent's opinion
that Dunham was disabled was not supported by objective findings
and was inconsistent with other evidence on the record.  (Id.)

- 5 -

However, the ALJ accorded significant weight to Dr. Walter Goo's opinion that Dunham was "physically capable of performing activities at the sedentary exertional level." (Id. at 20.)  The ALJ found that the claimant's "complaints of some pain [were] reasonable, considering the diagnoses of osteoarthritis and degenerative joint disease" (id. at 22), but that "the claimant's assertions regarding the severity, persistence, and limiting effects of his symptoms [were] not consistent with the medical evidence, his demeanor at the hearing, or the testimony regarding his actual physical activities." (Id. at 24.)  Overall, the ALJ accorded Dunham's complaints of disabling pain and other non-exertional limitations "only fair credibility."[2]  (Id. at 25.)

Dunham appealed the ALJ's decision to the SSA's Appeals Council, which declined further review.  (Id. at 6.)  Dunham seeks reversal of SSA's final decision and an award of benefits arguing, among other things, that he meets the listings in

_____

[2] Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength -- i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, namely, sitting, standing, walking, lifting, carrying, pushing, and pulling -- and mental limitations and restrictions. It assesses an individual's abilities to perform postural, manipulative, visual, communicative, and mental activities such as stooping, climbing, reaching, handling, seeing, hearing, speaking, and understanding and remembering instructions and responding appropriately to supervision.  It also considers the ability to tolerate various environmental factors such as temperature extremes.  Social Security Rul. 96-8p, 1996 WL 374184 (July 2, 1996).

- 6 -

§ 1.02, § 1.03, and § 14.08.[3]  The Commissioner opposes Dunham's

motion for reversal and moves to affirm the agency's decision.

<u>STANDARD OF REVIEW</u>

A district court's review of the SSA's findings of fact is

limited to whether those findings are supported by substantial

evidence.  42 U.S.C. § 405(g); <u>Brown v. Bowen</u>, 794 F.2d 703, 705

(D.C. Cir. 1986).  Substantial evidence is "'such relevant

evidence as a reasonable mind might accept as adequate to support

a conclusion[,]'" <u>Butler v. Barnhart</u>, 353 F.3d 992, 999 (D.C.

Cir. 2004) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971)), and is "more than a mere scintilla of evidence," but

"something less than a preponderance of the evidence." <u>Ware v.</u>

<u>Barnhart</u>, 357 F. Supp. 2d 134, 138 (D.D.C. 2004) (internal

quotation marks omitted).  In making this determination, "the

court must carefully scrutinize the entire record, but may not

reweigh the evidence and replace the [SSA's] judgment regarding

---

[3] Dunham also argues that the ALJ erred by not properly
considering and giving controlling weight to the opinions of
Dunham's treating physician, Dr. Trent, by not providing an
explanation for rejecting Dr. Trent's diagnosis, by giving more
weight to conclusions by a physician -- Dr. Goo -- who did not
treat Dunham, by relying on only isolated portions of Dr. Trent's
reports, and by not considering the cumulative effect of Dunham's
medical conditions.  These arguments will not be addressed and
Dunham's request for benefits will be denied without prejudice
since the case will be remanded for further determinations about
whether Dunham can ambulate effectively and whether he suffers
from fungating or ulcerating lesions not responsive to treatment,
which may affect the weight accorded to Dr. Trent's opinion that
Dunham is disabled and Dunham's testimony regarding his medical
conditions.

- 7 -

the weight of the evidence with its own." <u>Brown v. Barnhart</u>, 370
F. Supp. 2d 286, 288 (D.D.C. 2005) (internal quotation marks
omitted) (quoting <u>Jackson v. Barnhart</u>, 271 F. Supp. 2d 30, 34
(D.D.C. 2002)).   The inquiry examines whether the ALJ "'has
analyzed all evidence and has sufficiently explained the weight
he has given to obviously probative exhibits[.]'" <u>Crawford v.
Butler</u>, 556 F. Supp. 2d 49, 52 (D.D.C. 2008) (quoting <u>Butler</u>, 353
F.3d at 999).

DISCUSSION

In order to determine whether a claimant is disabled, an ALJ
is required to perform a five-step evaluation.   20 C.F.R.
§§ 404.1520, 416.920; <u>Butler</u>, 353 F.3d at 997.   The claimant
carries the burden of proof for the first four steps.   At step
one, the ALJ determines whether the claimant has been employed in
substantial gainful work since the onset of his impairment.   If
the claimant has performed substantial gainful work, his claim
will be denied.   If the claimant has not performed substantial
gainful work, the ALJ must determine at step two whether the
claimant's impairments are medically severe.   If the impairments
are not severe, the claimant is not disabled.   If the impairments
are severe, the ALJ at step three must compare the claimant's
impairments with those in the listing of impairments promulgated
by the SSA.   If the claimant suffers from an impairment that
meets the duration requirement and meets or equals an impairment

- 8 -

listed in Appendix 1 of the regulations, the claimant is deemed
disabled and the inquiry ends.  If no match exists, the ALJ must
continue the evaluation.  At step four, the ALJ must determine if
the claimant retains any residual functional capacity, namely,
the ability to do past relevant work.  Finally, if the claimant
is unable to perform his past work, the burden shifts to the
Commissioner to demonstrate that the claimant is able to perform
other work based on a consideration of his residual functional
capacity, age, education and past work experiences.

I.   SECTIONS 1.02 & 1.03 LISTINGS

     Dunham argues that his degenerative joint diseases in his
hip and knee and the limitations on his ability to ambulate
effectively satisfy both the § 1.02 and the § 1.03 listings.
Under the § 1.02 listing, Dunham would have to show that he has

> [m]ajor dysfunction of a joint(s) . . . [c]haracterized
> by gross anatomical deformity (e.g., subluxation,
> contracture, bony or fibrous ankylosis, instability)
> and chronic joint pain and stiffness with signs of
> limitation of motion or other abnormal motion of the
> affected joint(s), and findings on appropriate
> medically acceptable imaging of joint space narrowing,
> bony destruction, or ankylosis of the affected joint(s)
> . . . with . . . [i]nvolvement of one major peripheral
> weight-bearing joint (i.e., hip, knee, or ankle),
> resulting in inability to ambulate effectively, as
> defined in 1.00B2b . . . .

20 C.F.R. § 404, Subpart P, App'x 1 § 1.02.  Dunham's condition
meets the § 1.03 listing if Dunham had "[r]econstructive surgery
or surgical arthrodesis of a major weight-bearing joint, with
inability to ambulate effectively, as defined in 1.00B2b, and

- 9 -

return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  Id. § 1.03.

The regulations state that

[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

§ 1.00(B)(2)(b)(1).  Persons who ambulate effectively "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school."[4]

§ 1.00(B)(2)(b)(2).

Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard

_____

[4] "Activities of daily living include, but are not limited to, such activities as doing household chores, grooming and hygiene, using a post office, taking public transportation, or paying bills.  We will find that you have a 'marked' limitation of activities of daily living if you have a serious limitation in your ability to maintain a household or take public transportation because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, caused by your immune system disorder (including manifestations of the disorder) or its treatment, even if you are able to perform some self-care activities."  20 C.F.R. 404, Subpart P, App'x 1 § 14.00(I)(6).

- 10 -

> public transportation, the inability to carry out
> routine ambulatory activities, such as shopping and
> banking, and the inability to climb a few steps at a
> reasonable pace with the use of a single hand rail.
> The ability to walk independently about one's home
> without the use of assistive devices does not, in and
> of itself, constitute effective ambulation.

Id.

The ALJ concluded that Dunham did not meet either listing because "he was able to ambulate effectively." (R. at 21.) However, the ALJ did not adequately address the issue of whether Dunham can ambulate effectively.  The ALJ noted that prior to Dunham's July 2004 surgery, Dunham had chronic pain in his right hip, but that any impairment was temporary and did not prevent Dunham from ambulating for at least a twelve-month period.  (Id. at 20-21.)  After hip surgery, the ALJ found, Dunham had improved walking ability and "little, if any, hip pain."  (Id. at 21.) The ALJ noted that Dunham's recovery from knee surgery was expected to "last for six months, not the full twelve months needed to meet the required severity.  After knee surgery, Dunham "was able to walk with a cane" and the ALJ concluded that Dunham could ambulate effectively.  (Id.)

While using two canes is one example from the regulations of ineffective ambulation, walking with one cane on a daily basis is not presumptively effective ambulation under § 1.00(B)(2). Fleming v. Barnhart, 284 F. Supp 2d 256, 268 (D. Md. 2003) (noting "'if [a claimant] who uses [only] one cane or one crutch

- 11 -

is otherwise unable to effectively ambulate, the impairment(s)
might still meet or equal a listing'" (quoting Revised Medical
Criteria for Determination of Disability, Musculoskeletal System
and Related Criteria, 66 Fed. Reg. 58,010, 58,013 (Nov. 19,
2001)).  The ALJ identified some of the relevant evidence
concerning ambulation when weighing Dunham's testimony and
evaluating his function reports, and noted Dunham's testimony
that he "could walk one city block."  (R. at 22-25.)  Even if
true, the ALJ did not discuss whether such walking was at "a
reasonable walking pace over a sufficient distance to be able to
carry out activities of daily living" or whether Dunham could
"travel without companion assistance to and from a place of
employment or school."  § 1.00(B)(2)(b)(2).  One court found it
error for an ALJ to conclude that the applicant could ambulate
effectively because he was not medically required to use an
assistive device without considering whether the applicant can
"sustain a reasonable walking pace over a sufficient distance to
be able to carry out activities of daily living" and comparing
the applicant's "functional ability to the examples provided in
the Listing."  Dobson v. Astrue, 267 F. App'x 610, 611-12 (9th
Cir. 2008) (internal quotation marks omitted); see also Burns v.
Astrue, No. 1:07-cv-817, 2008 WL 4099018, at *3 (S.D. Ind. Aug.
22, 2008) (rejecting the Commissioner's claim that the applicant
cannot satisfy the "inability to ambulate effectively" element

- 12 -

because "the ALJ did not discuss that element nor did he weigh the evidence relevant to that element, and it is not the court's place to make that determination in the first instance" (internal quotation marks omitted)).

The ALJ's finding that Dunham can ambulate effectively because he can walk one block with a cane did not fully apply § 1.00(B)(2)(b) in determining effective ambulation. Thus, the ALJ's conclusion that Dunham does not meet or equal the listings in § 1.02 and § 1.03 is not based on substantial evidence. Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 68 (D.D.C. 2006) (noting that although the ALJ's ruling is given considerable deference, the court could not determine whether the ruling is based on substantial evidence where the ALJ failed to evaluate the required factors).

II.  SECTION 14.08(F) LISTING

For his condition to qualify as an impairment listed in § 14.08(F), Dunham would have to show that he is infected with HIV and that he has

> [c]onditions of the skin or mucous membranes (other than described in B2, D2, or D3, above), with extensive fungating or ulcerating lesions not responding to treatment (for example, dermatological conditions such as eczema or psoriasis, vulvovaginal or other mucosal Candida, condyloma caused by human Papillomavirus, genital ulcerative disease).

20 C.F.R. § 404, Subpart P, App'x 1 § 114.08(F); see also Spain v. Barnhart, No. 04 Civ. 2859, 2005 WL 1423358, at *7 (S.D.N.Y.

- 13 -

June 16, 2005) (noting that "HIV infection is not a listed
impairment unless accompanied by symptoms or conditions listed in
20 C.F.R. § 404, Subp. P, App. 1, Listing 14.08").  While
Dr. Lanier had previously concluded that Dunham had "a fungating
skin condition not responding to treatment[,]" the ALJ noted that
Dunham was hospitalized for treatment of chronic folliculitis,
that the problem was resolved by July 2004, and that Dr. Lanier
concluded in August 2004 "that there had been no opportunistic
infections."  (R. at 21.)  The ALJ found that "[t]he record [did]
not show ongoing treatment for recurrent skin lesions" and stated
that "[s]everity under [§ 14.08(F) was] not met."  (Id.)

Dunham argues that the ALJ erred in finding that Dunham's
condition does not meet the § 14.08(F) listing because he has
been diagnosed with "chronic eczema and cellulitis, a painful
skin condition."  (Pl.'s Mem. at 13-14.)[5]  In a January 2006
letter, Dr. Lanier concluded that Dunham "is also under the care
of a dermatologist for severe eczema," a condition that along
with Dunham's significant degenerative osteoarthritis produced
impairments.  (Ex. 33 at 1-2.)  Dr. Trent also noted in July 2005

---

[5] Dunham also notes that he suffers from post-herpetic
neuralgia.  However, post-herpetic neuralgia is not itself a skin
condition, but pain associated with a herpes infection.  See
Stedmans Medical Dictionary 814, 1206 (27th ed. 2000) (stating
that a neuralgia is "[p]ain of a severe, throbbing, or stabbing
character in the course or distribution of a nerve," and that
post-herpetic pain accompanies or follows herpes zoster, which is
an inflammatory skin disease).

- 14 -

that Dunham "suffers from chronic cellulitis" (Ex. 32 at 1),[6] and

in March 2006 that he had "chronic wide spread eczema."[7]  (R. at

951.)  Dunham also testified that he had continuous problems with

eczema which required medication, and which was "related to [his]

HIV as infections."  (Id. at 1002.)  Eczema is specifically

listed as an example of a "[c]ondition[] of the skin or mucous

membranes . . . with extensive fungating or ulcerating lesions

not responding to treatment."  § 14.08(F).

    The ALJ stated that Dunham has eczema and that it is an

opportunistic infection related to HIV, but he did not explain

whether or why he discounted that fact in concluding that the

§ 14.08(F) requirements had not been met.  (R. at 24.)  The ALJ's

decision did not make clear whether he considered these 2005 and

2006 opinions of Dr. Lanier and Dr. Trent that Dunham was

suffering from recurrent skin conditions.  The ALJ did not

explain his finding that the record reflects no opportunistic

infections and no ongoing treatment for skin lesions in the face

of Dr. Lanier and Dr. Trent's more recent statements that Dunham

was receiving care for "severe eczema" or had "chronic

---

[6] "Cellulitis is an acute spreading infection of the skin
and subcutaneous tissues[.]"  Lee Russ et al. 9 Attorneys Medical
Advisor § 114:18 (2008) (describing the infection as creating a
lesion).

[7] The ALJ noted several of Dr. Trent's conclusions from the
March 2006 report (R. at 19), but the ALJ did not mention
Dr. Trent's statement that Dunham suffers from chronic eczema.

cellulitis." (Pl.'s Mem., Exs. 32, 33.)  The ALJ need not have
specifically addressed every piece of evidence in his decision,
but probative evidence suggesting that Dunham was receiving
continuing treatment for chronic eczema and cellulitis should not
go unexplained.  Lane-Rauth, 437 F. Supp. 2d at 67 (noting that
although "'the ALJ need not articulate his reasons for rejecting
every piece of evidence, he must at least minimally discuss a
claimant's evidence that contradicts the Commissioner's
position'" (quoting Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir.
2000)); see also Taylor v. Heckler, 595 F. Supp. 489, 492 (D.D.C.
1984) (noting that the ALJ must evaluate all relevant evidence
and provide an indication for how probative evidence was
weighed).  Martin v. Apfel, 118 F. Supp. 2d 9, 15 (D.D.C. 2000)
found that an ALJ erred by failing to consider the plaintiff's
uncontradicted testimony that her sleep schedule prevented her
from working because the ALJ cannot ignore probative evidence
that is unfavorable to his conclusion without explanation.
Likewise, Chelte v. Apfel, 76 F. Supp. 2d 104, 108-09 (D. Mass.
1999) also concluded that a decision was not supported by
sufficient evidence because that ALJ mentioned "plaintiff's
chronic yeast infections, but did not address them as a possible
listed manifestation of HIV symptoms" as is required by the
listing, and failed to consider uncontroverted evidence that the
plaintiff suffered routinely from vulvovaginal candidas, which

- 16 -

was a condition included specifically in the listing.  <u>Butler</u> found that an ALJ's decision was not based on substantial evidence because the ALJ neither provided a reason for rejecting a treating physician's opinions, which clearly supported the applicant's physical limitations, nor acknowledged the contradictory evidence in the record.  353 F.3d at 1002-03 (original brackets omitted) (citing <u>Williams v. Shalala</u>, 997 F.2d 1494, 1499 (D.C. Cir. 1993) (stating that the fact that the ALJ did not "expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which record supplie[d] the reason" for rejecting the treating physician's opinion)).

The ALJ's decision that Dunham cannot satisfy the § 14.08(F) listing is not supported by substantial evidence.  <u>See</u> <u>Butler</u>, 353 F.3d at 1003; <u>Brown</u>, 794 F.2d at 708 (stating that "[t]he judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored"); <u>Scott v. Barnhart</u>, 297 F.3d 589, 595 (7th Cir. 2002) (requiring that the ALJ build an "accurate and logical bridge" from the evidence to the

- 17 -

conclusion, which allows the court to "assess the validity of the

agency's ultimate findings" (internal quotation marks omitted)).[8]

III. FACTUAL DEVELOPMENT ON REMAND

While Dunham asserts that the evidence conclusively shows

that he meets the § 1.02, § 1.03, and § 14.08(F) listings,

further facts need to be developed on remand before a conclusion

can be reached.  See Brown, 370 F. Supp. 2d at 292 (noting that

while the court can "affirm, modify, or reverse the decision of

the agency, "with or without remanding the cause for a

rehearing[,] . . . it is the role of the ALJ, not the courts, to

make findings of fact and to resolve conflicts in the evidence").

Despite presenting some evidence of chronic eczema or cellulitis,

Dunham has not shown that his skin conditions meet or equal the

§ 14.08(F) listing.  Beynum v. Barnhart, 435 F. Supp. 2d 142, 146

(D.D.C. 2006) (stating that "for a claimant to show that his

impairment matches a listing, it must meet all of the specified

---

[8] Dunham asserts also that the ALJ incorrectly applied the
severity standard in § 14.08(N) in considering whether Dunham
satisfied the § 14.08(F) listing.  However, the ALJ appeared to
have considered whether Dunham could meet the § 14.08(F) and the
§ 14.08(N) listings.  The ALJ discussed the § 14.08(F) listing
first and applied it to Dunham's situation before concluding that
"[s]everity under this section [was] not met."  The ALJ then
noted that "[u]nder Section 14.08N, the required severity level
will be met when there are repeated HIV infections resulting in
significant documented symptoms or signs (e.g., fatigue, fever,
malaise, weight loss, pain, night sweats)," and found that Dunham
also did not meet the § 14.08(N) listing.  (R. at 21.)  In the
updated regulations, the § 14.08(N) listing is now found in
§ 14.08(K) with some changes.

- 18 -

medical criteria"). Eczema is identified in the listing as an example of a qualifying condition, but cellulitis is not specifically mentioned, and Dunham would have to show that it involves extensive fungating or ulcerating lesions that are unresponsive to treatment. See Anderson v. Astrue, No. 07 Civ. 7195, 2008 WL 655605, at *13 (S.D.N.Y. Mar. 12, 2008) (stating that the applicant did not satisfy the listing where the evidence did not show that his warts were unresponsive to treatment because doctors "successfully removed the warts following each outbreak with no adverse side effects"), adopted by Anderson v. Comm'r of Social Security, No. 07 Civ. 7195 (S.D.N.Y. June 18, 2008) (order adopting without objection the report and recommendation in its entirety); see generally 20 C.F.R. § 404, Subpart P, App'x 1 § 14.00(C)(11) ("Resistant to treatment means that a condition did not respond adequately to an appropriate course of treatment [and the issue of] [w]hether a response is adequate or a course of treatment is appropriate will depend on the specific disease or condition you have, the body system affected, the usual course of the disorder and its treatment, and the other facts of your particular case."). Moreover, Dunham must also show that his HIV infection coupled with his skin condition "has lasted or can be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1525(c)(4) (emphasis added).

- 19 -

Finally, the facts regarding whether Dunham can ambulate effectively as measured under listings § 1.02 and § 1.03 should be developed.  Specifically, the ALJ should determine whether Dunham can sustain a reasonable walking pace over a sufficient distance to engage in activities of daily living and travel without companion assistance to and from a place of employment.

CONCLUSION AND ORDER

Because the ALJ did not explain his treatment, if any, of probative evidence contradicting his conclusion about Dunham's skin conditions and did not adequately determine whether Dunham can ambulate effectively, the ALJ's determinations that Dunham's condition does not meet or equal the § 1.02, § 1.03, and § 14.08 listings were not supported by substantial evidence.  However, because further factual determinations are required, Dunham's request for an award of benefits will be denied without prejudice and the case will be remanded for further administrative proceedings.  Dunham's motion for judgment of reversal will be granted in part and the Commissioner's motion for affirmance will be denied.  Accordingly, it is hereby

ORDERED that the Commissioner's motion for judgment of affirmance [17] be, and hereby is, DENIED.  It is further

ORDERED that Dunham's motion for judgment of reversal [11] be, and hereby is, GRANTED in part and DENIED in part.  The case

- 20 -

is REMANDED for further administrative proceedings, but the

request for an award of benefits is DENIED without prejudice.

SIGNED this 24th day of March, 2009.

```
                         _____/s/_____
                         RICHARD W. ROBERTS
                         United States District Judge
```